**GARY D. PEAKE EXCAVATING INC., a New York Corporation; Gary D. Peake, Plaintiffs–Appellants,**

v.

**TOWN BOARD OF THE TOWN OF HANCOCK, a Municipal Corporation and Political Subdivision of the State of New York, Defendant–Appellee.**

No. 1746, Docket 95–9280.

United States Court of Appeals, Second Circuit.

Argued June 27, 1996.

Decided Aug. 22, 1996.

Thomas S. West, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Albany, N.Y. (Michael S. Elder, Goodwin, Procter & Hoar, Albany, NY, of counsel), for Plaintiffs–Appellants.

John Hudanich, Hartjen & Hudanich, Johnson City, NY, for Defendant–Appellee.

Before: MINER, JACOBS and PARKER, Circuit Judges.

MINER, Circuit Judge:

Plaintiffs-appellants Gary D. Peake Excavating, Inc. and Gary D. Peake (together, the "Plaintiffs") appeal from a judgment entered in the United States District Court for the Northern District of New York (McAvoy, Ch. J.) granting in part their motion for summary judgment and granting in part the motion for summary judgment of defendant-appellee Town Board of the Town of Hancock. The district court determined that Section 5 of Local Law No. 1 of the Town of Hancock ("Law No. 1" or the "ordinance") violated the Commerce Clause of the United States Constitution by discriminating against out-of-state waste. The district court severed Section 5 from Law No. 1 and determined that the remainder of the ordinance did not violate the Commerce Clause. On appeal, the Plaintiffs contend that severance of Section 5 of Law No. 1 was inappropriate, and that Law No. 1, following the severance of Section 5, violates the Commerce Clause. For the following reasons, we affirm the judgment of the district court.

## BACKGROUND

Peake is a resident of the Town of Hancock (the "Town"), which is located in Delaware County, New York, directly across the Delaware River from Pennsylvania. Peake is the owner of Gary D. Peake Excavating, Inc. ("Peake Excavating"), a company engaged in the demolition and excavation business in New York and Pennsylvania. Peak Excavating maintains an office and equipment facility on Peake's 614–acre property located in the Town. Peake Excavating's demolition activities generate large quantities of construction and demolition debris known as "C & D debris." Prior to 1988, the disposal of C & D debris largely was unregulated in New York State, and Peake Excavating disposed of its C & D debris on Peake's property.

In 1988, the New York State Department of Environmental Conservation (the "DEC") promulgated a comprehensive regulatory scheme governing the approval, construction, operation, and monitoring of C & D debris landfills. See N.Y. Comp.Codes R. & Regs. tit. 6, § 360-7. In January of 1991, Peake applied to the DEC for a permit to construct a C & D landfill on his property. Peake planned to dispose of Peake Excavating's C & D debris in the landfill and to accept C & D debris from others in return for a disposal charge or "tipping fee." According to Peake, the proposed landfill would generate at least four million dollars in tipping fees.

In February of 1991, the Town Board enacted Law No. 1, entitled "A Local Law prohibiting the operation of dumps and dumping." Law No. 1 provides, in pertinent part:

Section 2. Declaration of Policy:

It is hereby determined by the Town Board that the operation of dumps for the disposal of garbage and rubbish, and the dumping of garbage and rubbish, is likely to constitu[te] a hazard and menace to the health and safety of the residents of the

Town of Hancock and it is therefore the intent of this Local Law to prohibit dumping and the operation of dumps[1] in the Town of Hancock, pursuant to Section 130, subdivisions (6) and (15) of the Town Law of the State of New York.

. . . .

Section 4.  Restrictions:

a) The operation or maintenance of a dump is hereby prohibited in the Town of Hancock.

b) The dumping of paper, garbage, rubbish, trash, toxic chemicals and substances and other waste materials of any nature in the Town of Hancock except at a municipally operated transfer station or land fill is prohibited.

Section 5.  Exception:

Nothing herein contained shall be deemed to prohibit any person from disposing of non-commercial or industrial rubbish, waste material, and garbage on property upon which such rubbish, waste material, and garbage is produced.

. . . .

Section 7.

The invalidity of any Section or provision of this Local Law shall not invalidate any other Section or provision thereof.

Violations of Law No. 1 are punishable as a misdemeanor with a maximum fine of $1000 and a maximum term of imprisonment of six months.

Although the Town does not operate its own C & D landfill, it operates a transfer station that accepts up to 100 square feet of C & D debris from any person.  The County landfill is located approximately 50 miles from the Town and generally does not accept out-of-county waste.  Therefore, Law No. 1 precludes Peake from operating a C & D landfill on his property and substantially limits the amount of C & D debris that the Plaintiffs can dispose of in the Town.

On June 21, 1994, the Plaintiffs commenced an action in the district court, claiming that Law No. 1 violated the Commerce Clause and the Equal Protection Clause of the Fourteenth Amendment.  They sought a declaration that the ordinance was unconstitutional, a permanent injunction prohibiting the enforcement of the ordinance, and attorney's fees.  The Plaintiffs claimed that, by preventing Peake Excavating from disposing of C & D debris on Peake's property, Law No. 1 caused them to suffer monetary damages, including lost profits and increased disposal costs.  The Plaintiffs alleged that, as a result of Law No. 1, Peake Excavating's "ability to obtain demolition jobs in Pennsylvania has been virtually eliminated."

In April of 1995, all parties moved for summary judgment.  On May 26, 1995, the district court granted the Plaintiffs' motion for summary judgment to the extent of declaring that Section 5 violated the Commerce Clause.  The district court determined that Section 5, which permits Town residents to dump waste on their property if the waste was produced on that property, violated the Commerce Clause because it discriminated against out-of-state waste based only on its point of origin.  The court then severed Section 5 from Law No. 1 and found that the remainder of the ordinance did not violate the Commerce Clause or the Equal Protection Clause.  Accordingly, the district court granted the Board's motion for summary judgment to the extent that it declared that Law No. 1, without Section 5, did not violate the Commerce Clause.  Consequently, the district court denied the Plaintiffs' motions for a preliminary injunction and for attorney's fees.

On July 21, 1995, the Plaintiffs moved for reconsideration, claiming that, even after Section 5 was severed, the ordinance violated the Commerce Clause.  By order dated November 24, 1995, the district court denied the Plaintiffs' motion for reconsideration.  The Plaintiffs filed a timely notice of appeal on December 11, 1995.

## DISCUSSION

### I.  Ripeness

The Board contends that the Plaintiffs' claims are not ripe for judicial review.  The

---

**1.**  The term "dump" is defined as "a place used for the disposal and leaving of paper[,] garbage, rubbish, trash, toxic chemicals and substances and other waste materials of any nature by the public or by any person."  Section 3 of Law No. 1.

Board argues that, because Peake currently is not using his property as a disposal facility and cannot do so until he obtains a permit from the DEC, Law No. 1 has not prevented him from disposing of C & D debris on his property. We disagree.

■ The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Lab. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In determining whether a claim is ripe for review, we consider the fitness of the issues for review and the hardship to the parties of withholding review. *See id.* at 149, 87 S.Ct. at 1515–16. However, it is well settled that a litigant need not expose himself to criminal prosecution to challenge the constitutionality of a statute providing criminal penalties. *See Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 302, 99 S.Ct. 2301, 2310–11, 60 L.Ed.2d 895 (1979).

■ We believe that the Plaintiffs' challenge to the constitutionality of Law No. 1 is ripe for adjudication. The issues presented by the Plaintiffs' claims are fit for judicial review because they are purely legal and may be decided without further factual development. *See Able v. United States,* 88 F.3d 1280, 1290 (2d Cir.1996) (holding that constitutional challenge to statute was "ready for judicial determination" because it presented issues that were "primarily legal, and not factual, in nature").

Moreover, the Plaintiffs would suffer substantial hardship if judicial review were withheld. Peake already has spent "considerable sums" of money in an effort to obtain a permit from the DEC to operate a C & D landfill. He claims that he is "reluctant to spend more money to obtain the additional information required by [the DEC] because, even if a permit were granted, Local Law No. 1 would still prevent [him] from operating [his] disposal facility." Reviewing the ordinance at this time will allow Peake to make an informed decision as to whether he should expend additional money to obtain a DEC permit to operate a C & D landfill. If we uphold the ordinance, Peake will be able to cut his losses by halting his efforts to

obtain a DEC permit; if we invalidate the ordinance, Peake can continue with the DEC permitting process, knowing that obtaining the DEC permit would not be in vain. In contrast, if judicial review were withheld until Peake obtained a DEC permit, Peake would have to choose between (1) abandoning his plans to construct the C & D landfill in deference to a potentially unconstitutional ordinance and (2) expending "considerable sums" of money to obtain a DEC permit and thereafter commencing an action challenging the ordinance. We see no reason why Peake should have to expend substantial sums of money before challenging the constitutionality of the ordinance. Nor should Peake be required to subject himself to the threat of the criminal penalties imposed by Law No. 1 in order to challenge the ordinance. Accordingly, the Plaintiffs' claims are ripe for adjudication. *See Triple G Landfills, Inc. v. Board of Comm'rs,* 977 F.2d 287 (7th Cir. 1992) (holding that plaintiff's constitutional challenge to county ordinance regulating landfills was ripe even though plaintiff had not applied for, or obtained, a state permit to operate a landfill).

## II. Severability

The Plaintiffs contend that the severance of Section 5 from Law No. 1 was inappropriate. They argue that, by severing Section 5, the district court created a completely different ordinance that the Board never intended to enact. We disagree.

■ The determination of whether an invalid portion of a state statute can be severed from the valid portions so that the remainder of the statute can be preserved is a question of state law. *National Advertising Co. v. Town of Niagara,* 942 F.2d 145, 148 (2d Cir.1991). Under New York law, "a court should refrain from invalidating an entire statute when only portions of it are objectionable." *Id.* Although the presence of a severability clause is not dispositive, "[t]he preference for severance is particularly strong when the law contains a severability clause." *Id.* New York state courts apply the following standard to determine whether severance is appropriate:

The question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots.

*People ex rel. Alpha Portland Cement Co. v. Knapp,* 230 N.Y. 48, 60, 129 N.E. 202 (1920), *cert. denied,* 256 U.S. 702, 41 S.Ct. 624, 65 L.Ed. 1179 (1921).

■ We believe that severance of Section 5 was permissible in this case. The record indicates that, had the Board foreseen that Section 5 would be declared unconstitutional, they would have intended that the ordinance be enforced without the offending section. By including Section 7, which provides that "[t]he invalidity of any Section or provision of this Local Law shall not invalidate any other Section or provision thereof," the Board indicated that it intended that the ordinance be enforced without Section 5. Indeed, on this appeal, the Board does not contest the severance of Section 5 and has expressed its desire to have Law No. 1 enforced without Section 5.[2]

Moreover, the primary reason for enacting the ordinance was to prohibit the operation of landfills and the dumping of waste in the Town in order to protect the health and safety of Town residents. This purpose is reflected in the ordinance's title, "A Local Law prohibiting the operation of dumps and dumping," and in its declaration of policy, which states that "the operation of dumps for the disposal of garbage and rubbish, and the dumping of garbage and rubbish, is likely to constitu[te] a hazard and menace to the health and safety of the residents of the Town of Hancock and it is therefore the intent of this Local Law to prohibit dumping and the operation of dumps in the Town." This purpose still will be served if Section 5 is severed from the ordinance. Accordingly,

we hold that the severance of Section 5 from Law No. 1 was permissible under New York law.

## III.  Commerce Clause

The Plaintiffs contend that, even after Section 5 is severed from Law No. 1, the ordinance violates the Commerce Clause.[3] The Plaintiffs claim that the ordinance was enacted for the purpose of discriminating against interstate commerce. They argue that the ordinance discriminates against interstate commerce because it treats out-of-state waste differently than it treats in-Town waste based only on its point of origin. Finally, the Plaintiffs claim that, even if the ordinance does not discriminate against interstate commerce, the ordinance violates the Commerce Clause under the Supreme Court's decision in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

### A.  Commerce Clause Principles

The Commerce Clause provides that Congress "shall have Power ... [t]o regulate Commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. "Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc. v. Department of Envtl. Quality,* 511 U.S. 93, ——, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1994). This negative restriction on state power commonly is referred to as the "dormant" Commerce Clause. *See Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources,* 504 U.S. 353, 359, 112 S.Ct. 2019, 2023–24, 119 L.Ed.2d 139 (1992).

The Supreme Court has established a two-step approach to determine whether a state or municipal law violates the dormant Commerce Clause. Under the first step, we determine whether the challenged law "reg-

---

**2.** We express no view as to whether Law No. 1 was unconstitutional prior to the severing of Section 5.

**3.** For convenience, all references to "Law No. 1" and the "ordinance" in this section of the opinion are to Law No. 1 without Section 5.

ulates evenhandedly with only incidental effects on interstate commerce, or discriminates against interstate commerce." *Oregon Waste*, 511 U.S. at ——, 114 S.Ct. at 1350 (quotations omitted). The term "discrimination" in this context "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.*

Under the second step, we apply the appropriate level of scrutiny. The Supreme Court has established two levels of scrutiny. If we determine that the law discriminates against interstate commerce, we apply the "strictest scrutiny" and the law "is virtually *per se* invalid." *Id.* at —— – ——, 114 S.Ct. at 1350–51. In contrast, if we determine that the law does not discriminate against interstate commerce, we apply the more flexible balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). *See City of Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535–36, 57 L.Ed.2d 475 (1978).

### B. Discrimination Against Interstate Commerce

■ We think that the district court properly found that the ordinance was not enacted for the purpose of discriminating against out-of-state waste. The record indicates that the ordinance was enacted to protect the health and safety of the residents of the Town. The ordinance's declaration of policy provides:

> It is hereby determined by the Town Board that the operation of dumps for the disposal of garbage and rubbish, and the dumping of garbage and rubbish, is likely to constitu[te] a hazard and menace to the health and safety of the residents of the Town of Hancock and it is therefore the intent of this Local Law to prohibit dumping and the operation of dumps in the Town. . . .

Moreover, there is nothing in the minutes of the Board meetings indicating that the ordinance was enacted for the purpose of discriminating against out-of-state waste. Instead, the discussions during Board meetings related primarily to the health and safety concerns of Town residents.

The Plaintiffs place great emphasis on the deposition of F. Gerald Mackin, a member of the Board who voted in favor of the ordinance. Mackin testified that the importation of out-of-state waste was "one of the factors" that the Board considered in enacting the ordinance. However, as the district court found, Mackin's testimony indicates that the ordinance was enacted primarily because the Board believed that "dumps" and "dumping" were likely to constitute a hazard to the health and safety of Town residents. Mackin testified that the ordinance was enacted as a result of: (1) the Board's observations that private disposal facilities in neighboring towns had created serious environmental problems and health hazards; (2) environmental problems caused by earlier chemical dumping by local businesses within the Town; (3) the belief that the DEC's regulation of private disposal facilities was inadequate; and (4) a general concern about preserving the aesthetic qualities of the Town. Therefore, Mackin's testimony as a whole indicates that the ordinance was enacted for the purpose of protecting the health and safety of the Town residents, rather than for the purpose of discriminating against out-of-state waste.

We also think that Law No. 1 is not discriminatory in its effect because it does not treat out-of-state waste differently from waste generated in the Town. The ordinance prohibits the operation of a dump in the Town and forbids the dumping of waste materials in the Town, except at a Town-operated transfer station or landfill. These restrictions apply equally to all waste. In other words, the ordinance does not place any burdens on out-of-state waste that are not imposed on waste generated in the Town. Therefore, the ordinance does not have a discriminatory effect on interstate commerce.

The Plaintiffs contend that Law No. 1 is nearly identical to the waste "flow control" ordinances invalidated by the Supreme Court in *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994), and by this court in *SSC Corp. v. Town of Smithtown*, 66 F.3d 502 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 911, 133 L.Ed.2d 842 (1996). The

waste flow control ordinance before the Supreme Court in *Carbone* required that all nonhazardous waste within the town of Clarkstown, New York be processed at a designated transfer station that the town had caused to be built. In order to finance the new facility, the town entered into an agreement with a private contractor, under which the contractor would build the facility, operate it for five years, and then sell it to the town for one dollar. In return, the town guaranteed that at least 120,000 tons of waste would be deposited at the transfer station each year and that the contractor could charge an above-market tipping fee of $81 per ton of waste. If the facility received less than 120,000 tons in any year, the town would make up the difference in the lost tipping fees. The town enacted its flow control ordinance to ensure that the contractor would receive 120,000 tons of waste per year. *Carbone*, 511 U.S. at ——, 114 S.Ct. at 1680.

The Supreme Court held that Clarkstown's ordinance discriminated against interstate commerce because it required all waste within the town to be deposited at the one favored facility. *Id.* at ——, 114 S.Ct. at 1682. The Court explained that the ordinance improperly suppressed competition in the waste processing market by "hoard[ing] solid waste, and the demand to get rid of it, for the benefit of the preferred processing facility." *Id.* at ——, 114 S.Ct. at 1683. Accordingly, the Court held that the ordinance violated the dormant Commerce Clause. *Id.* at ——, 114 S.Ct. at 1684.

The waste flow ordinance reviewed by this court in *SSC Corp.* was nearly identical to the ordinance reviewed by the Supreme Court in *Carbone*. The ordinance at issue in *SSC Corp.* required that all "acceptable waste" collected within the town of Smithtown, New York be disposed of at a disposal facility designated by the town board. 66 F.3d at 507. Pursuant to the ordinance, the town board designated a local incinerator as the exclusive disposal facility for acceptable waste. *Id.* We held that "*Carbone* compels us to find that Smithtown's flow control ordinance facially discriminates against interstate commerce because it directs all town waste to a single local disposal facility, to the exclu-sion of both in-state and out-of-state competitors." *SSC Corp.*, 66 F.3d at 514. We went on to hold that, under "rigorous scrutiny," the ordinance violated the dormant Commerce Clause. *Id.*

The Plaintiffs' reliance on *Carbone* and *SSC Corp.* in the present case is misplaced. The ordinances in *Carbone* and *SSC Corp.* were found to be discriminatory because they required all waste within the town to be disposed of at the one favored local facility, to the exclusion of out-of-state competitors. Law No. 1, in contrast, does not require that all waste be disposed of at a single facility. Law No. 1 prohibits the dumping of any waste in the Town, except at the Town-operated transfer station. However, Law No. 1 does not prevent Town residents from disposing of waste at any out-of-Town facility. Nor does it deny any out-of-Town competitor access to the Town's waste market. Therefore, Law No. 1 is not a flow control ordinance that "hoards solid waste, and the demand to get rid of it, for the benefit of the preferred processing facility." *Carbone*, 511 U.S. at ——, 114 S.Ct. at 1683.

### C. The Pike Balancing Test

Having concluded that Law No. 1 does not discriminate against interstate commerce, we evaluate the ordinance under the *Pike* balancing test. In *Pike*, the Supreme Court stated that, "[w]here the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." 397 U.S. at 142, 90 S.Ct. at 847. "We have explained that the 'incidental burdens' to which *Pike* refers 'are the burdens on interstate commerce that exceed the burdens on intrastate commerce.'" *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1287 (2d Cir.1995) (quoting *New York State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1308 (2d Cir.1994)), *cert. denied*, —— U.S. ——, 116 S.Ct. 1452, 134 L.Ed.2d 571 (1996).

The Plaintiffs contend that the ordinance burdens interstate commerce in two ways. First, they argue that, by preventing Peake

Excavating from disposing of C & D debris on Peake's property, the ordinance effectively prevents Peake Excavating from performing demolition jobs in Pennsylvania. Second, the Plaintiffs argue that the ordinance operates to deprive Peake of substantial revenues from tipping fees that he would realize from the operation of a C & D landfill.

We think that the ordinance does not impose any incidental burdens on interstate commerce. First of all, it is not clear from the record how the ordinance prevents Peake Excavating from performing demolition jobs in Pennsylvania. Although the ordinance may cause Peake Excavating to incur increased disposal costs by preventing it from disposing of C & D debris on Peake's property, the ordinance does not prevent Peake Excavating from performing demolition jobs in Pennsylvania or New York. The ordinance simply precludes Peake Excavating from disposing of all but a limited amount of C & D debris in the Town. The ordinance imposes the same burden on other New York and Pennsylvania contractors with whom Peake Excavating competes. More importantly, the ordinance applies equally to all waste, regardless of its point of origin. Therefore, the ordinance does not impose burdens on interstate commerce that exceed the burdens imposed on intrastate commerce.

Furthermore, although the ordinance prohibits Peake from operating a C & D landfill and therefore deprives him of revenues from tipping fees, the ordinance imposes the same burdens on interstate commerce as it imposes on intrastate commerce in this respect also. The ordinance prevents any private entity from operating a landfill in the Town regardless of whether it is local or out-of-state. Accordingly, we conclude that the ordinance does not impose incidental burdens on interstate commerce.

Finally, we note that Law No. 1 provides the Town with legitimate local benefits. As discussed earlier, the Board enacted the ordinance to protect the health, safety, and welfare of Town residents. Legislation pertaining to public health and safety consistently has been recognized as an important local interest. *See Fort Gratiot,* 504 U.S. at 360, 112 S.Ct. at 2024; *Pike,* 397 U.S. at 143, 90

S.Ct. at 847–48. When enacting the ordinance, the Board believed that C & D landfills could present health hazards to Town residents and could cause serious harm to the local environment. This belief was based largely upon problems experienced with the disposal of other waste as well as the Board's concerns that the DEC's regulation of C & D landfills would prove to be inadequate. The Board's decision to prohibit the operation of private C & D landfills and the dumping of C & D debris in the Town therefore is grounded in the need to protect the health and safety of Town residents.

Because the Plaintiffs failed to demonstrate that Law No. 1 placed any incidental burdens on interstate commerce and because Law No. 1 provides legitimate local benefits, we believe that the Plaintiffs failed to demonstrate that "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike,* 397 U.S. at 142, 90 S.Ct. at 847. Accordingly, the ordinance does not violate the dormant Commerce Clause.

## CONCLUSION

We have considered the Plaintiffs' remaining contentions, and we find them all to be without merit. In view of the foregoing, we affirm the judgment of the district court.